MONCURE, P.
The constitution of Virginia which is published in the Code of 1873, pp. 60-101, contains the following provisions which seem to be material to be considered *262 in the decision of the question now before the supreme court of appeals, in regard to county court judges.
Code, p. 84, article VI, § 1. “There shall be a supreme court of appeals, circuit courts and county courts.”
P. 85, § 5. "The judges shall be chosen by the joint votes of the two houses of the general assembly, and shall hold their office for a term of twelve years.”
P. 86. § 11. “For each circuit (of the sixteenth judicial circuits into which, by § 9 of the same article, the state was directed to be divided), a judge shall be chosen by the joint vote of the two houses of the general assembly. who shall hold his office for a term of eight years, unless sooner removed in the manner prescribed by this constitution.’’
*P. 87, § 13, (headed “county courts”). “In each county of this commonwealth there shall be a court called the county court; which shall be held monthly, by a judge learned in the law of the state, and to be known as the county court judge: provided, that counties containing less than eight thousand inhabitants shall be attached to adjoining counties for the formation of districts for county judges. County court judges shall be chosen in the same manner as judges of the circuit courts. They shall hold, their office for a term of six years, except the first term under this constitution, which shall be three years, and during their continuance in office they shall reside in their respective counties or districts. The jurisdiction of said courts shall be the. same as that of the existing county courts, except so far as it is modified by this constitution, or may be changed by law.”
P. 89. “General provisions.”
“Sec. 22. All the judges shall be commissioned by the governor, and shall receive such salaries and allowances as may be determined by law, the amount of which shall not be diminished during their term of office. Their terms of office shall commence on the first day of January next following their appointment; and they shall discharge the duties of their respective offices from their first appointment and qualification under this constitution until their terms begin.
“Sec. 23. Judges may be removed from office by a concurrent vote of both houses of the general assembly; but a majority of all the members elected to each house must concur in such vote, and the cause of removal shall be entered on the journal of each house. The judge against whom the general assembly may be about to proceed shall have notice thereof, accompanied by a copy of the cause alleged for his removal, at least twenty days before the day on which either house of the general assembly shall act thereon.”
*“Sec. 25. Judges, and all other officers elected or appointed, shall continue to discharge the duties of their offices, after their terms of service have expired, until their successors have qualified.”
The foregoing are all the provisions of the constitution which seem to have a material bearing on the subject under consideration.
The last term of six years of the county court judges of the state commenced on the first day of January, 1874, and ended on the last day of December, 1879. The succeeding term of six years of the said judges commenced on the first day of January, 1880, and will end on the last day of December, 1885. The judges elected for the last term ceased to be judges at the end of that term, except that, under § 25 aforesaid, they are to “continue to discharge the duties of their offices, after their terms of service have expired, until their successors have qualified.”
As soon as their successors have qualified, then, of pourse, they will instantly cease to discharge those duties.
The election of judges of the county courts for the term of six years, which commenced on the first day of January, 1880, devolved on the present legislature; which certainly entered upon the discharge of that duty in due time. Some, and perhaps many, of those judges were elected and qualified before the first day of January last, and no question has been raised, nor, I presume, can be raised, as to the legality or regularity of their appointment.
But all of the appointments were not made before that day. Why, not does not ajipear. Doubtless different reasons existed in different cases. Some of those reasons may have concerned the old incumbents of the office nd the question of their reappointment. Some of them may have concerned the question as to a propriety of choice between competitors for the office in various cases. At all events, the legislature, for some cause or other, deemed it proper to delay the completion of the election for a few days after *the first day of last January; after the lapse of which few days they completed the election, and the persons so elected qualified according to law, and proceeded to enter upon the execution of the duties of their office. But in some of the cases, at least, the old incumbents denied their right to do so, and claimed a right for themselves to hold on to the offices, and perform all their duties, and receive all their emoluments, until the first day of January, 1881. notwithstanding the election and qualification of their successors, and the offer of the same to enter upon and perform immediately and henceforth the duties of their offices. The said old incumbents placed their claim alone upon the ground of the appointment and qualification of their successors after, instead of on or before, the 1st day of January. If such appointment and qualification had been on or before that day, they would have made no difficulty and raised no question on the subject.
Now, can it be that this accidental delay for a few days in the appointment of the successors in these offices is to have such an important effect as would be produced by sustaining the views of the old incumbents who are competing in this case?
Could the framers of the constitution have intended that a circumstance so apparently slight and immaterial as a few days difference in the time of the appointment of a judge of the county court who might be *263 appointed on the 31st day of December, 1879, or on the 1st day of January, 1880, should have such an important effect as that on the former case, he would go into office and become entitled to receive his salary immediately from and after the former day; whereas in the latter he would not, until about twelve months thereafter — as that, in the former case, the old encumbent would be entitled to nothing; whereas in the latter he would be entitled to continue to hold the office and receive the salary for twelve months after the expiration of the term for which he was elected, *while his successor would be entitled to receive nothing on account of his office until after the expiration of about twelve months from the time of his election and qualification as such? I think that such could not have been the intention of the framers of the constitution. They could not have intended anything so unreasonable; and to warrant the court in deciding that they did, the evidence of such an intention should plainly appear in the constitution. Does such an intention so appear in the constitution? I think not.
The only provision in the constitution which can create any doubt or difficulty on the question is that it contained in section 22 of article 6. page 89, of the Code. The language of that section is: “All the judges shall be commissioned by the governor, and shall receive such salaries and allowances as may be determined by law, the amount of which shall not be diminished during their term of office. Their terms of office shall commence on the first day of January next following their appointments; and they shall discharge the duties of their respective offices from their first appointment and qualification under this constitution until their terms begin.”
Now, the framers of the constitution evidently designed that the terms of office of all the judges should commence on the first day of January next following their appointment; and such is the express language of the constitution. This provision was made with a view to the organization of the machine of government and setting it in motion. They determined to fix upon a certain day for the commencement of the terms of office of all the judges, and they fixed on the first day of January for that purpose. But before the arrival of that day next after the adoption of the constitution, it was necessary that the duties of their respective offices should be discharged by some person. By whom were they to be discharged? The constitution expressly declares._ After providing in regard to all the *iudges, that “their terms of office shall commence on the first day of January next following their appointment,” it thus proceeds: “And they shall discharge the duties of their respective offices from their first appointment and qualification under this constitution until their terms begin.”
The constitution was adopted and put in operation some eight or nine months before the 1st day of January, 1871. Infixing on a day for the commencement of the terms of office of the judges, the first day of January next following their appointment was selected for that purpose. There was a long interval between that day and the day of the appointment and qualification of the judges under the _ constitution; and it was necessary that provision should be made in the constitution for the discharge of such judicial duties as might be necessary in the state during that long interval. Therefore it was provided, in section 32 as aforesaid, that the judges “shall discharge the duties of their respective office's from their first appointment and qualification under this constitution until their terms begin.” This sentence is separated by a semi-colon, only, from the one which immediately precedes it, in these words: “their terms of office shall commence on the first day of January next following their appointment;” thus showing that the whole section has relation to the time when the constitution was adopted, which was very shortly before the time of the first appointment and qualification of judges under the same. If we read the section in this view of the facts, we can have no doubt or difficulty about its meaning or the priority of construing it in reference to the first day of January next succeeding the first appointment and qualification of the judges.
On or before the said first day of January a judge was no doubt elected by the general assembly for each county of the state, for the term of three years from the 1st day of January, 1871; and on or before the 1st day of January, 1874, *a judge was probably elected by the general assembly for each county of the state, for the term of six years from the last named day. On or about the 1st day of January, 1880, the time came for making another election of county judges, some of whom were elected before the first day of January; as to the validity of whose election no question is raised. Others of whom were elected a few days after the 1st day of January. But it is contended by some of the old incumbents of a county judgeship that an election made after the first day of January last cannot take effect until the 1st day of January, 1881; twelve months after it would have taken effect if it had been made a few days before it actually was made; that is, on or before the first day of January last.
Now, here is a case in which all the county judgeships of the state became vacant on the 1st day of January, 1880, and the duty of filling the vacancies by new elections on or about that day devolved on the general assembly which was then in session. Some of the vacancies were accordingly filled by elections so made on or before that day; while the filling of the others was delayed for a few days for the sake of convenience, and under a bona fide belief on the part of the electors th' t such delay could make no difference. But is now contended by some of the judges, whose terms of six years expired on the first day of January last, that they are entitled to hold on to their offices till the first day of January next, because the appointment and qualification of their successors *264 took place a day or two after, instead of on or before the first day of January last.
I think the constitution ought to receive not a strict and narrow, but a liberal and reasonable construction. The legislature is invested by the constitution with the elective franchise in this case, for the benefit, of course, of the state. It is intrusted with the duty of filling the county judgeships, all of which have become vacant. Its right to perform *this duty is disputed because not performed on or before _ certain day, though performed a day or two thereafter. A judge whose term of service has expired claims to be entitled to hold his judgeship a year longer, because his successor was not appointed and did not qualify on or before the first day of January last, though he was and did a day or two thereafter. Now, this delay of a day or two could not have injured, but may have benefited the state, for which latter purpose it was doubtless incurred.
The first day of January was regarded both by the convention that framed the constitution and the legislatures convened under it, as the proper day for the commencement of a term of a judgeship. The 1st day of January, 1871, being the first after the adoption of the constitution, some nine or ten months before, was therefore fixed as the day for the commencement of thefirst terms of thejudgeships under the constitution; and provision was made therein for the immediate appointment and qualification of the judges whose judicial terms were to commence on the first day of the next succeeding January, but who were to discharge the duties of their respective officers from their first appointment and qualification as aforesaid until the commencement of their terms.
Now, a term of six years of the county court judgeships of the state commenced on the' 1st day of January, 1880; a like term of .the same judgeships having ended on the preceding day — to wit: the 31st day of December, 1879. No doubt it was expected and intended that all the judges who were to act as such on and after the 1st day of January, 1880, would be appointed and would qualify on or before - that day. But as we have seen, only a portion of the said judges then was appointed and qualified, while the rest of them, for different reasons, were not aopointed and did not qualify for several days thereafter. Still, whether they were appointed and qualified on, before or after that day, the term of the office to which they were appointed *respectively commenced on the same day — to wit: the 1st day of January, 1880, and was to continue for the period of six years thereafter. Certainly it was not the intention of the framers of the constitution that the terms of the particular judgeships might begin and end on different days. They intended the contrary, and fixed upon the 1st day-of January as the proper day for that purpose, though that day was a long way off when the constitution was adopted and went into operation.
The result of my opinion is, that the petitioner, John E. Broadus, is legally; detained in custody under a commitment issued by Edmund Waddill, jr., as judge of the county court of Henrico, on the 9th day of February. 1880, and that the said Waddill, jr., was, at the time of issuing said commitment, the judge of the said court, duly appointed and qualified as such under the constitution and laws of the state; and therefore the petition of said Broadus to be discharged from said custody must be denied. And that the petitioner, William Walsh, is illegally detained in custody under a commitment issued by Edward C. Minor, styling himself judge of the county court of Henrico, on the — -day of February, 1880, and that the said Minor was not, at the time of issuing the said last mentioned commitment, the judge of the said court, duly appointed and qualified as such under the constitution and laws of the state; and therefore the petition of said Walsh to be discharged from said custody must be granted.